FRANKLIN,<br>January,<br>1832.<br><br>Hapgood<br>vs.<br>Burt.

      The judgement of the county court
      is affirmed with additional costs.

---

EXECUTORS OF JOSEPH TUCKER *vs.* ABNER KEELER and
CHARLES COOTWIRE.

GRAND-ISLE,<br>January,<br>1832.

If a mortgagor remains in possession of the mortgaged premises after a decree of fore-
closure and the expiration of the time for redemption, he is a tenant at sufferance
to the mortgagee, or his assignee, and the statute of limitations will not run in his
favor.

A defendant in ejectment, who does not derive his possession from the plaintiff, but
claims adversely, may, at any time before trial, purchase in an outstanding title to
protect his possession.

Ejectment for the second division lots drawn to Ebenezer
Morse, Stephen Pearl, Joseph Fay and Stephen ————, in the
town of South-Hero. Plea, not guilty, and issue joined to the
country. On the trial of this case, it appeared in evidence that
one Ebenezer Stark, without any title, took possession of that part
of the land in question, which was in dispute, in the year, A. D.
1802; that in the year 1805, he mortgaged the same to one Car-
lisle D. Tylee for $100. Tylee obtained a decree of foreclosure
in January, 1807, and the equity of redemption expired in
January, 1808. The 5th of May, 1807, Tylee executed a
quit-claim deed of the premises to James Tobias, of Grand-Isle.
Ebenezer Stark remained in possession for several years after;
and during the late war, he left his family upon the land, and was

there himself but very little afterwards. In 1813, Ebenezer Stark quit-claimed the land in question to Ralph Stark, his son, who had the principal care of his father's family until they moved off in, or about, the year 1823 ; and the same year (1823) the defendants took possession of the premises, which were immediately afterwards attached by the plaintiffs as the property of Ebenezer Stark, and, in 1825, set off on execution. It further appeared in evidence that Tobias died in the year 1811 ; and it did not appear that said lands were inventoried as his estate, nor that any claim had been made by Tobias, Tylee, or any other person, under the mortgage, from the time of the foreclosure, up to the 29th of March, 1830, when the heirs of Tobias deeded the same lands to *Abner Keeler,* one of the defendants. It also appeared that Stark, from 1802, to the time of his moving away, was very poor, and much embarrassed with debts. The defendants then offered to show the acknowledgements of Ebenezer Stark, previous to plaintiff's attachment in 1823, that he had never paid off the mortgage, but that the same remained due ; which showing was objected to by the plaintiffs ; but the court overruled the objection, and Ralph Stark was offered as a witness, but was objected to because, for the consideration of $200, the said Ralph had quit-claimed the same land to the said *Keeler,* with warranty and seizin : whereupon *Keeler* executed to the said Ralph a writing discharging him from his said covenants ; and the witness was sworn, and testified, " that when his father executed to him a quit-claim deed of the lands in question, in the year 1813, he then told the witness, that the mortgage was not paid, and the witness must pay it, if the same was called for;" and said that it was never called for, and the witness never paid it ; and after the close of the war, he heard his father say " that the mortgage had never been paid off, but remained due." Stephen Pearl, a witness, testified that he lived on the lot adjoining Stark, and that Stark always told him, that he had lost the land upon the mortgage, but intended to buy it back whenever he should have a chance : and in 1812 or 1813, Stark attempted to obtain a title to it, by bidding it off at vendue ; but it was redeemed before the time of redemption expired. The plaintiffs contended that the jury ought to presume that the mortgage was given to Tylee for the purpose of defrauding the creditors of Ebenezer Stark ; or if given for a valuable consideration, then, that the mortgage was paid off prior to the deed from the heirs of Tobias to *Keeler* ; that the said Ebenezer Stark, by remaining in possession fifteen years, by himself and family, after the expira-

GRAND-ISLE,
January,
1832.

Tucker's ex'rs,
vs.
Keeler.

tion of the equity of redemption, acquired a title to the land by the statute of limitations ;—that inasmuch as the plaintiffs are creditors of Ebenezer Stark, it was not competent for the defendants to purchase in an out standing title, after the commencement of this suit, to defeat the plaintiff's title, and requested the court so to instruct the jury. But the court were of opinion that there was no evidence in the case tending to induce a belief that the giving of the mortgage was in any wise fraudulent; that the jury were at liberty to presume, if they thought the facts would justify it, the mortgage money was paid off prior to the expiration of the equity of redemption ; but if not paid, then Tobias acquired an indefeasable estate in fee simple as against Ebenezer Stark, and all claiming under him ; and if Ebenezer Stark afterwards paid Tobias the amount of the decree, and interest, he must have taken a reconveyance of the estate by deed, in order to be reinvested with it ; and to suppose the contrary, might operate as a fraud upon a third person, as it did upon *Keeler* ; that if the condition of the mortgage was broken, Ebenezer Stark, by continuing upon the land, stood in the light of tenant at sufferance to the mortgagee, or his assignee, and the statute of limitations would not run in his favor. And, in relation to *Keeler* not having a right to purchase in the true title after an action of ejectment was brought against him, it is observable, that the plaintiffs did not put the defendants in possession ; therefore, they had a right to show the title out of the plaintiffs : and it was as competent for the defendants to show that Stark had no interest in the land at the time of the attachment, as it would be to show a defect in the attachment by which it would not hold ; and if the plaintiffs acquired no title by their levy by means of Ebenezer Stark having previously parted with his title, then *Keeler* had a right to purchase of the heirs of Tobias ; for, it did the plaintiffs no harm.. *Keeler* might have shown the title in the heirs of Tobias, and thereby defeat the plaintiffs' action—and the court so instructed the jury. To which decision and charge of the court the plaibtiffs excepted, and the case was ordered to be passed to the Supreme Court.

BAYLIES, J., *delivered the opinion of the Court.*—The act, *(Slade's Ed. ch.* 18, *s.* 2.) entitled " An act to prevent fraudulent speculations, and the sale of choses in action," in its *proviso*, says, this act is not to be construed in any way to affect any lease, deed, or other conveyance to the person in possession claiming

GRAND-ISLE, adversely to the lessor, or grantor. And the rule is, that a defen-
January, dant in ejectment, who did not derive his possession from the
1831. plaintiff, but claims adversly, may, at any time before trial, pur-
Tucker's ex'rs, chase in an outstanding title to protect his possession.—(8 *John.*
*vs.* *Rep.* 139. I see no error in the proceedings of the county
Keeler. court ; therefore, their

Judgement is affirmed with additional costs.

*Turner & Brown*, for plaintiffs.

*Allen, Smalley & Adams*, for defendants.