## W. F. DUNBAR et al. v. L. A. NEWMAN.

46  231
77  807
77  811
46  231
84  637

1. CHANCERY — JURISDICTION — MISTAKE IN WRITTEN INSTRUMENTS — PAROL EVIDENCE. — A court of equity has jurisdiction to grant relief on account of a mistake of facts in written contracts, whether executed or executory. Nor is it an objection to granting such relief, that the mistake is made manifest by parol evidence, if the proof be clear and satisfactory.

2. SAME — SAME — SAME — WHAT MUST BE MADE TO APPEAR TO OBTAIN DECREE TO REFORM WRITING. — To warrant a decree to reform an instrument it must be made manifest, by allegation, what was the agreement to which the parties consented, and in what the mistake consists. The writing must be accepted as the complete evidence of the agreement until it is shown that, by accident, fraud or mistake, it omits something it should contain, or includes something which ought to be left out.

3. SAME — SAME — SAME — ASSIGNEE OR HEIR OF PARTY ENTITLED TO RELIEF ON ACCOUNT OF MISTAKE — Where a party to a written contract is entitled to a decree to reform it because of mistake, the assignee of the interest of such party is in priority of estate with him and entitled to a like decree, and so of the heir of such party, where the subject-matter of the contract is real estate.

4. SAME — SAME — SAME — CASE UNDER CONSIDERATION. — D. owned two tracts of land, designated as the "Alloway Place" and "Wakefield." The west half of a certain section was divided between these places, the north half belonging to "Wakefield," and the south half to the other. D. mortgaged the "Alloway Place," but, by mistake, embraced in the deed the north half of the section, as well as the south half. Afterward the wife of "D." became purchaser of "Wakefield," but, by mistake, in drawing the deed to her, the south half of said west half was inserted, instead of north half, which was intended: *Held,* she was entitled to relief, as against the mortgage, if she could show the mistake as to the north half, omitted in the deed to her, and also that it was not intended by mortgagor or mortgagee to be embraced in the mortgage, but was put there by mistake.

APPEAL from chancery court of Adams county. WALKER, Chancellor.

The facts of this case appear clearly from the opinion. The questions discussed and decided arose upon a cross-bill to which a demurrer was sustained in the chancery court, and the opinion of the court plainly exhibits so much of the allegations of the cross-bill as present the questions decided. A condensed statement of the mistake complained of by the cross-bill is contained in the fourth paragraph of the syllabus of this case.

*W. F. Mellen,* for appellants.

The only point in this case is, whether the alleged clerical mistake made in the description of one-half section of land could be corrected by the chancery court as between the parties to the suit.

Chancery courts have generally full jurisdiction to correct mistakes of this kind as well as of many other kinds, and

the rule applies to parties and privies.    2 How. 701, 888 ; 5·
Smedes & Marsh. 71 ; 1 Story's Eq. Jur., §§ 152, 153, 155, 156 ;
9 Smedes & Marsh. 212 ; 2 Johns. Ch. 585 ; 2 Root, 1, 78,
415, 499 ; Kirby, 399 ; 2 Bibb, 29, 321 ; 5 Monr. ; 6 ib. 316 ;
2 J. J. Marsh. 133 ; 3 ib. 190, 232 ; 1 Pet. 1, 13 ; 1 Hammond,
501 ; Cook, 437 ; 1 Paige, 278 ; 2 Conn. 129 ; 10 ib. 243.

The complainant, Mrs. Newman, is subrogated to the
rights of Albert W. Dunbar, the original mortgagee.    She
stands in his place and can claim no right which he could
not assert, and she is relieved from no burden or disability
imposed on him.

On the other side, William H. Dunbar, the mortgagor of ·
the "Alloway" plantation, and the vendor of the "Wake-
field" plantation, seeks to correct the mistake.    The heirs
at law of Mrs. Sarah M. Dunbar, the vendee of the "Wake-
field" plantation, and who are children of William H.
Dunbar, mortgagor and vendor, seeks also to correct the mis-
take.    As between these parties and the original mortgagee,
Albert W. Dunbar, it is very clear that the mistake could be
corrected by a court of equity.    Is it not equally clear,
then, that it can be corrected against Mrs. Newman, who,
as to this mortgage, is the same person as Albert W. Dun-
bar.    38 Miss. 476.    But the objection is urged that we offer
parol evidence to correct the mistake.    I answer : 1st. Parol
evidence is clearly admissible to correct such errors.    See
authorities already cited.    2d. Our cross-bill does not show
that we rely upon parol evidence to prove the error.    We
refer to the Lacroze mortgage as evidence under seal to sus-
tain the allegations.    Nor is that all, the bill of complaint
alleges that the Alloway plantation was mortgaged ; the
mortgage shows that it was the Alloway plantation that
was intended to be mortgaged.    That was the agreement
between the parties ; that was their intention.    Now, we
allege, in our cross-bill, that a part of the Alloway planta-
tion, by a clerical error, was omitted from the mortgage,
and, in lieu thereof, that another tract of land, part of
another plantation (the Wakefield) was, by the same error

of description, covered by said mortgage. The bill further alleges, that the larger part of the same lands were subsequently mortgaged to Mrs. Lacroze. We allege the half section is correctly described in this mortgage to Mrs. Lacroze. This evidence under seal goes to establish what lands composed the Alloway plantation, and if there is any ambiguity, it is but a latent ambiguity, to be explained by parol evidence See authorities before cited. In addition to this, the sealed evidence as to what lands composed the "Wakefield" plantation, would undoubtedly go far to dispense with parol evidence on the subject. 3d. This objection is not to be taken on demurrer, but by exceptions or objections to evidence when offered. The pleader is not obliged to declare in his pleadings the nature or character of the evidence on which he relies to correct a mistake.

*S. L. & J. Guice*, for appellee.

SIMRALL, J.:

The bill was filed by the complainant to be substituted to the benefit of the mortgage executed by W. H. Dunbar, to Albert Dunbar, his surety upon the note protected by this security, and prayed that a foreclosure may be had for the satisfaction of the debt. Subsequently the bill was amended charging that Mrs. Dunbar, wife of the said Wm. H. Dunbar, had, since the exhibition of the original bill, acquired an interest by purchase in the mortgaged premises ; that thereby she would have the right to redeem, and making her a party defendant.

Mrs. Dunbar made her answer a cross-bill, craving relief on the facts as averred, that, since the institution of the suit, she had purchased the Wakefield plantation, and that, by inadvertence and mistake, there was included in the mortgage to Albert Dunbar, a lot of land which was not intended to be embraced, and there was omitted another parcel which was intended to be put in in its stead, and the same mistake was continued in the conveyance made to her. To the cross-

bill the complainant demurred, assigning special causes ; the averments of the cross-bill are to this effect: "There occurred an unintentional clerical error, the west half of section 1, township 3, range 5, west, containing three hundred and twenty-two $\frac{30}{100}$ acres, described as part of the Alloway plantation," was conveyed ; whereas it ought to have been the south half of said section, which is part of said plantation, the north half being part of the Wakefield plantation, also owned by W. H. Dunbar, and which adjoined Alloway ; that in the deed to her there is the same clerical mistake, that W. H. Dunbar never intended to mortgage the north half, but did intend so to incumber the south half of the section."

The case has been brought into this court by appeal from the decree sustaining the demurrer, and dismissing the cross-bill.    An ancient and unquestionable jurisdiction of a court of equity is to grant relief, on account of a mistake of facts, in written contracts, whether executed or executory, as if the writing expresses something of substance, variant from what the parties actually intended.    1 Story's Eq., § 152.    Nor is it any objection to afford the relief, because the mistake is made manifest by parol evidence, if, indeed, the proof be clear and satisfactory.    Marquis of Townsend v. Stangroom, 6 Vesey, 332, 333 ; Elliott v. Connell, 5 Smedes & Marsh. 107.    The rules of evidence are generally the same in chancery as in a court of law.    It is not competent in a court of equity to hear evidence to vary or contradict a written instrument (an agreement) any more than in a court of law, unless a foundation has been laid for it by allegations, that by "accident or fraud" it speaks a language and meaning different from the intention of the contracting parties."    Elliott v. Connell, *supra*.    The principle is thus stated in Kerr v. Kuykendal, 44 Miss. 145 : "If the contract, as reduced to writing, does not, from fraud, accident or mistake, express the terms as agreed on, then it may be modified or corrected so as to correspond with the actual agreement," and parol evidence is admissible to show

the discordance, etc.  To consider the deed in which the mistake occurs, as conclusive, by way of estoppel on the grantor, and his privies (as predicated in the two first assignments, as grounds of demurrer), would make it impossible, in any other state of the case, to reform the instrument by correcting a mistake.

Before a court of equity can reform the instrument, it must be made, by allegation, clearly to appear what was the agreement to which the parties consented, and in what the mistake consists.  The writing must be accepted as the complete evidence of the agreement, until it is shown, that, by accident, fraud or mistake, it omits something that ought to be included, or, as in this case, it includes a parcel of land which ought to have been left out and another parcel which ought to be substituted in its place.  If the cross-bill makes an averment equivalent to the statement that W. H. Dunbar intended to convey, and the mortgagee intended to accept, the south half of section 1, instead of the north half, and that the misdescription was a clerical error of the scrivener, then it contains equity, unless Mrs. Dunbar stands in such relations as that she cannot invoke relief. She claims as a purchaser ; how, is not disclosed.  Assuming that she bought from W. H. Dunbar, she acquired nothing but the equity of redemption.  She occupies, by assignment, the position of her vendor.  She asserts that she intended to purchase the north half of the section, but by clerical mistake the south half was inserted in her deed. This case, in some of its features, is like that of Hyde v. Warren et al.,* decided at this term, where a misdescription of the lands intended to be conveyed was corrected and reformed.  After Mrs. Dunbar had filed her cross-bill, the suit was revived in the name of her heirs, who adopted her cross-bill and answer as their own.  It is said that Mrs. Dunbar did not stand in such priority to the mortgagor as gives her a right to insist upon a reformation

---

* *Supra,* p. 13.

of the mistake in the mortgage; and, if she is precluded, so
are her heirs. Her purchase made her privy in estate to
W. H. Dunbar. She claims to be a purchaser of the
Wakefield plantation, and of the north half of the section
in dispute as part of it; but that, by clerical error, the
south half was conveyed instead of the north half. As
against her vendor, she is entitled to a reformation. The
only obstacle urged, as obstructing the relief, is the mort-
gage by W. H. to Albert Dunbar. But W. H. Dunbar, in
his life, joined with his wife in the cross-bill setting up the
mistake in the mortgage. It cannot be controverted, that
if she and Albert Dunbar agreed, the one to give and the
other to accept a mortgage on the south half of the section,
that either of them would have a right to reform the con-
veyance so as to make it have that operation. Such relief
would place both of them in the precise predicament that
they bargained for. If the " right" of W. H. Dunbar has
been transferred to Mrs. Dunbar, or by contract was in-
tended . to be passed to her, but failed by accident or mis-
take, she and her heirs, who are also his heirs, stand in
such priority to him as that they may claim a rectification;
so that they may enjoy that which was meant to be trans-
ferred. Nor would the complainant be injured, or any
right of his be invaded . Her equity is a substitution to
the place of Albert Dunbar in these transactions. The full
measure of his just claim is, that he shall have the precise
extent of security by the mortgage that was actually agreed
upon by him and W. H. Dunbar, that is, the very lands
contracted to be mortgaged.

In order, therefore, that Mrs. Dunbar's title to relief may
be established, she must show, first, that she bargained for,
and intended to purchase, and her vendor sold, and meant
to convey, the north half of the section. Then she dis-
closes such a mistake as a court of equity would relieve.
But, although she may establish thus much, she could not
be redressed at the expense of, or to the injury of, those
deriving rights under the mortgage, unless she also showed

that the north half of the section was not meant by mort-
gagor and mortgagee to be included in the deed, but, by
mistake, was put there in lieu of the south half.

Enough appears in the bill to indicate a good title to
relief, but it is defectively stated in this, that the mistakes in
the instruments are not set out with sufficient precision and
definiteness. As we have seen, both parties to the deeds
must have agreed as to the lands to be conveyed. The
mistake will be common to both if lands are embraced, not
contemplated, and lands omitted which both agreed should
be included. We are of opinion, therefore, that the assign-
ment in the demurrer, to the effect that the mistakes in the
instruments are not alleged with sufficient definiteness on
the points above referred to, is well taken, and that the
chancellor did not err in sustaining the demurrer. We are
inclined, therefore, to give the appellants an opportunity to
amend their cross-bill in this respect, on the return of the
cause to the chancery court ; also, a more particular state-
ment of Mrs. Dunbar's purchase and acquisition of title.

The decree sustaining the demurrer is affirmed, except so
far as it dismisses the cross-bill, that will be retained to
allow the appellants to amend if they apply ; if not, it will
stand as dismissed. Appellants to be taxed with costs in
this court.